IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHANNON BUTLER, Guardian Ad Litem
of STACEY WEBB,

      Plaintiff,

vs.

DOUGLAS COUNTY, a political
subdivision of the State of
Oregon; SHERIFF CHRIS BROWN;
FRED LUKE HERSCHER, D.O.;
and CALVIN GRAHAM,

      Defendants.

Civil No. 02-6335-AA
OPINION AND ORDER

---

Steven C. Beardsley
Michael K. Sabers
Beardsley, Jensen & Von Wald, Prof. LLC
4200 Beach Drive, Suite 3
PO Box 9579
Rapid City, South Dakota 57709

Daniel M. Holland
Ronald M. Terzenbach
Loomis & Holland
801 East Park Street
Eugene, Oregon 97401
    Attorneys for plaintiff

Steven H. Pratt
Thomas F. Armosino
Arne Cherkoss
Frohnmayer, Deatherage, Pratt,
Jamieson, Clarke & Moore, P.C.
Larson Creek Professional Center 2592 East Barnett Road
Medford, Oregon 97504
    Attorneys for defendant Fred Luke Herscher, D.O.

Jens Schmidt
Ross M. Williamson
Harrang Long Gary Rudnick P.C.
360 East 10th Avenue, Suite 300
Eugene, Oregon 97401-3248
    Attorneys for defendants Douglas County, Brown and Graham

AIKEN, Judge:

Plaintiff moves for partial summary judgment on her "constitutional rights claim" (42 U.S.C. § 1983); defendant Fred Luke Herscher, D.O. (Herscher) moves for summary judgment on all claims; and defendants Douglas County, Sheriff Chris Brown (Brown), and Calvin Graham (Graham) move for summary judgment on all claims. These motions are denied.

Plaintiff filed an amended complaint alleging a civil rights violation pursuant to 42 U.S.C. § 1983 that the medical care provided to plaintiff while she was incarcerated at Douglas County Jail constituted a deliberate indifference to plaintiff's serious medical needs resulting in serious injuries and damages. Plaintiff alleges that defendants acted with malice or showed a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety and welfare of others, including plaintiff.

Plaintiff also brings two claims of negligence, the first against defendant Douglas County; and the second against defendant Herscher.

The facts in this case are extensive and thoroughly disputed throughout nearly every hour of plaintiff's four day incarceration in the Douglas County Jail (the Jail). The parties dispute whether timely medical intervention would have made any difference in terms of plaintiff's ultimate medical outcome (with supporting expert testimony on both sides); and who ultimately was in charge of the medical department at the Jail including making decisions regarding appropriate diagnosis, medical care and treatment.

There is no dispute that plaintiff was incarcerated in the Jail from December 13, 2000, until the night of December 16, 2000. At that point, however, the parties' "undisputed" facts end. Briefly, the disputed factual allegations in this case are as follows: While incarcerated, plaintiff offers evidence that she told medical personnel that her family has a history of cerebral aneurysm. Plaintiff's medical intake form indicated that plaintiff suffered from a four day headache prior to admission to the Douglas County Jail. While incarcerated at the Jail, plaintiff had a telephone conversation with her grandmother complaining of an intense headache and that the correctional facility staff would not take her to a doctor for another week.

During the time period at issue, the medical department consisted of various emergency medical technicians (EMT), including full-time EMT employees defendant Calvin Graham, Melissa McGarvey Smith, Douglas Daniels, and Jeff Barr. EMT Daniels testified that Graham's employment was terminated from the medical facility due to his addiction to drugs; Barr's employment was terminated because he stole drugs from the medical facility; and McGarvey was terminated due to incompetence. Moreover, plaintiff offers evidence that EMT Daniels had been "written up" for his behavior, misconduct, and "personal vendetta against Melissa McGarvey."

EMT Graham stated that training at the Jail was "fragmented at best and hazardous at worst;" that the Jail contained "no training competencies to attain, no delineated endpoints for training, and outdated standing orders; and upon completion of six months of training at the Jail he was unaware of his training status or of his position in relation to the end of the probationary period.

Plaintiff offers evidence that McGarvey was "written up" for 26 work errors in less than two weeks, including errors in dispensing medication; and that McGarvey documented the dispersal of medications to plaintiff when plaintiff was not even physically located in the Jail but was undergoing emergency surgery off-site. Graham stated that no procedures existed for dispensing medications at the Jail's medical department; there

Page 4 - OPINION AND ORDER

was no competency testing for anyone working in the Jail; and there had not been a medical department meeting for six years prior to plaintiff's incident.

As a result of a medical department meeting that occurred after plaintiff's incident, Graham stated that the six year old standing orders were old and outdated; there were no policies or procedures in place for the medical department; and narcotics were not being counted properly. Evidence exists that Graham made numerous errors in dispensing medications to inmates including providing the wrong medications to inmates and incorrect doses of prescribed medications.

There was a formal investigative report filed by Detective Sergeant Tim Robeson finding that EMT Barr had stolen prescription medications for his girlfriend and that there existed an ongoing practice of stealing prescription medications by other EMTs in addition to Barr. Robeson's investigative report also found the following: it was the regular practice of Jail employees to take prescription medicines from the infirmary; Barr was trained and authorized to hand out Motrin "willy nilly" to inmates; Barr was unaware of any policies or procedures for the medical department; medication counts were almost always off; and that no accounting of prescriptions was done for the months of October, November and December 2000. Robeson also found in his investigation that Graham found his work to be confusing, as

dispensing of drugs was done differently by every employee.

Sergeant Somodi was the supervising Sergeant of the medical department before and during the relevant time period. Somodi was in charge of the medical department during that time. Captain Stratton, the Commander of the Jail, stated that Sergeant Somodi had a mental breakdown and was terminated.

Plaintiff offers evidence that defendant Herscher is a physician who had an employment contract with the Jail and the Juvenile Detention Center that required him to "provide on call supervision of the Jail nurses who work regular shifts at the Jail and who will need direction by telephone approximately four to five times a week." Further, Herscher's employment contract required him to comply with Oregon State Board of Pharmacy rules which required him to establish a written list of frequently used medicinal substances. Herscher's employment contract held him accountable for maintenance of medicines and records of medicines.

Herscher stated that it did not concern him that medication counts at the Jail were off; that he was aware that EMT Barr was terminated for stealing drugs; that it would not concern him if one of the EMT's was stealing drugs; that it would not concern him if an EMT who was stealing drugs was also giving care to the inmates; and that it did not concern him that reports indicated that McGarvey had committed 26 errors over a two week period of

time, including 7 errors in one day. Herscher also testified that he would be "glad" to have full-time employees train incoming EMTs who had been terminated for stealing drugs, drug addiction, or written up an many as 26 times in a two week period for errors in prescribing medicine. Herscher further testified that he was unaware how a Jail employee could be trained on Jail policies and procedures without the ability to refer to a manual regarding the medical sector of the corrections department. Herscher testified that he did not ask plaintiff if anybody in her family had ever had an aneurysm despite admitting that a family history of aneurysms would be a "red flag" that there may be a bigger medical problem. EMT Daniels testified that plaintiff informed medical personnel that her family had a history of cerebral aneurysms.

In determining whether plaintiff's Eighth Amendment claim is viable, the court must analyze whether medical services provided at a penitentiary are so deficient that they reflect a deliberate indifference to the serious medical needs of the prisoners. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). The Eighth Amendment requires that prison officials provide a system of ready access to adequate medical care. Id. at 103-04. The Ninth Circuit has stated that, "access to medical staff has no meaning if the medical staff is not competent to deal with the prisoner's problems. The medical staff must be competent to examine

prisoners and diagnose illnesses." Hoptowit v. Dixy Lee Ray, 682 F.2d 1237 (9th Cir. 1982).

As noted above, there exist many disputed issues of material fact surrounding the quality of medical care available to plaintiff, and the care that plaintiff actually received while incarcerated at the Jail. I am unable to rule as a matter of law either that plaintiff can or cannot sustain her Eighth Amendment claim based on this record. Therefore, I deny both plaintiff's motion for partial summary judgment and County defendants and Herscher's motions for summary judgment on plaintiff's Eighth Amendment claim. Similarly, I find disputed issues of fact surrounding plaintiff's negligence claims and therefore deny County defendants and Herscher's motions for summary judgment as to this claim.

Moreover, I deny County defendant's motion for summary judgment based on qualified immunity. Viewing the evidence in the light most favorable to plaintiff, I cannot rule as a matter of law that the evidence is insufficient to prove that the County defendants either denied plaintiff medical care or that they did so with "deliberate indifference;" nor can I rule that a Douglas County custom or policy did not cause the constitutional violation. Further, again the noting the state of the record, replete with countless contrary assertions, I cannot find as a matter of law that the County defendants did not violate "clearly

established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

## CONCLUSION

Defendants Douglas County, Brown and Graham's motion for summary judgment (doc. 52) is denied. Defendant Herscher's motion for summary judgment (doc. 64) is denied. Plaintiff's motion for partial summary judgment (doc. 60) is denied.

Finally, plaintiff's motion for additional discovery (doc. 103) is granted for the express and limited purpose of discovering the scope and time period of EMT Graham's drug addiction, and the role and knowledge of that drug addiction by Douglas County. The parties' request for oral argument on these motions is denied as unnecessary.

The court will contact the parties to schedule a telephone status conference to set a trial date.

IT IS SO ORDERED.

Dated this 11 day of April 2005.

_____
Ann Aiken
United States District Judge